UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA

Case No. 13-21565-CV-UNGARO

MATTHEW GISSEN

    Plaintiff,

v.

VILLAGE SOUTH, INC. PROFIT SHARING PLAN; THE VILLAGE SOUTH, INC., in its capacity as Plan Administrator of VILLAGE SOUTH, INC. PROFIT SHARING PLAN; RICHARD E. STEINBERG, PETER VENTRELLA, and AURELIO F. MORRELL, individually and jointly in their respective capacities as Co-Trustees of VILLAGE SOUTH, INC. PROFIT SHARING PLAN.

    Defendants.
_____/

## DEFENDANTS' MOTION TO DISMISS COUNTS II AND III AND CLAIM FOR OMITTED ASSETS WITH INCORPORATED MEMORANDUM OF LAW

Defendants, Village South, Inc. Profit Sharing Plan (the "Plan"); The Village South, Inc. ("Village South"), Richard E. Steinberg, and Aurelio F. Morrell, (all collectively the "Defendants"), hereby move pursuant to Rule 12(b)(6), Fed. R. Civ. P., to dismiss Counts II and III of Plaintiff's Complaint, with prejudice. Plaintiff's claims in Counts II and III, which purport to seek equitable relief for breach of fiduciary duties under 29 U.S.C. § 1132(a)(3), cannot proceed and should be dismissed because Plaintiff has an adequate remedy under Count I, which seeks payment of benefits under 29 U.S.C. § 1132(a)(1)(B). Moreover, Counts II and III fail because Plaintiff actually seeks legal, not equitable, relief against Defendants in that claim.

{26556336;1}

**MEMORANDUM OF LAW**

**I.     INTRODUCTION**

The Plan is a profit sharing and defined contribution plan governed by the Employee Retirement Income Security Act of 1974, as amended ("ERISA"), 29 U.S.C. §§ 1001 *et. seq.* The Plan provides retirement, disability and death benefits to participants and their beneficiaries. The Plan is funded by discretionary employer contributions made on behalf of eligible participants. The original employer and Plan Sponsor was Village South, and the current Plan Sponsor is Westcare Foundation. Up until mid-2004, Plaintiff Matthew Gissen was the President of Village South, the identified Plan Administrator and a Trustee of the Plan. Mr. Gissen's employment with Village South ceased on July 2, 2004 and his role as Trustee and Plan Administrator formally ceased on or by October 3, 2004. At that time, Aurelio Morrell was an existing Trustee, and Richard Steinberg and Peter Ventrella were appointed as Trustees. In addition to ERISA, the Plan is governed by a number of Plan documents, including the main Plan document and periodic summary plan descriptions ("SPDs"). *See e.g.,* Compl. Exs. B, M, N.[1]

While the Complaint is lengthy and detailed, the crux of Plaintiff claims is that his distribution of retirement benefits was incorrectly valued and, as a result, he is owed additional Plan benefits. The Complaint presents the following counts: Count I, a claim for recovery of adjusted Plan benefits under 29 U.S.C. § 1132(a)(1)(B); Count II, a claim for breach of fiduciary duty against the trustees pursuant to 29 U.S.C. § 1132(a)(3) – again seeking recovery of adjusted Plan benefits; Count III, a claim for breach of fiduciary duty against Village South as the Plan

---

[1] There are additional plan documents, including the ASC Institute Regional Prototype Defined Contribution Plan and Trust Prototype Basic Plan Document As Approved by the Internal Revenue Service Sponsored by EJ Reynolds, Inc. (the "2009 Basic Plan Document" or "2009 BPD"), that Plaintiff did not attach to the Complaint. Although not attached to this motion, these additional Plan documents are applicable and Defendants do not waive their applicability by not attaching.

Administrator pursuant to 29 U.S.C. § 1132(a)(3) – again seeking recovery of adjusted Plan benefits; and Count IV, a claim for statutory penalties. *See* Plaintiff's Complaint.

Plaintiff insists that the valuation of his distribution was controlled by the 2004 and 2005 SPDs indicating an annual valuation, and disputes that the amendments to the Plan implemented in 2009 are applicable to him or affect his benefits. While Plaintiff is correct that the 2004 and 2005 SPDs provided for annual valuations, the Basic Plan document (referred to in the documents as the "BPD"), including both the 2009 and 2003 BPDs, allowed for interim valuations of employee retirement benefits. *See, e.g.,* Compl. Ex. B at 13.2 [Doc. 1-7].[2] In addition, effective January 24, 2009, the Plan's SPD was amended to provide for quarterly valuations.

The economic crisis in the United States in 2008 severely impacted the Plan's assets. The total value of Plan assets as of June 30, 2008 was $3,732,616, but by December 31, 2008, the total value of plan assets had fallen to $2,025,282.81. In the Fall of 2008, the Plan became concerned about this severe decline. At that time, both the SPD and the prior practice of the Plan was to make requested disbursements as of the last valuation date. However, the Plan had not previously experienced a similar decline in the market. The Plan investigated this issue in November 2008 and determined that interim valuations would be made so that all participants would be treated fairly. The Plan determined that it could not, for the benefit of all participants, make distributions received after the investment declines based on the June 30, 2008 annual valuation in accord with the Plan's prior practice. Mr. Gissen formally requested distribution under the Plan in January 2009. The value of Mr. Gissen's benefits under the Plan as of June 30, 2008, was $766,689.71, but as of December 31, 2008, that value had declined to $466,066.65.

---

[2] As stated in footnote 1, Defendants assert the 2009 BPD is applicable to this dispute and do not waive that contention despite it not being attached to the pleadings. The 2009 BPD addresses valuations at sections 10.02(a) and (c).

The Plan's decision to make interim valuations after the stock market decline was appropriate because: (1) the Plan documents both before and after amendment expressly provide for interim valuations; (2) the principles of ERISA compel interim valuations for distributions made after the Plan suffered the severe decline in Plan assets in the Fall 2008; and (3) the 2009 Plan Documents provide for the distribution that was made to Mr. Gissen.

As discussed below, Plaintiff's attempts to recover against the trustees in Count II and the Plan Administrator in Count III are fatally flawed because, no matter how he describes it, Plaintiff's claim is really one for Plan benefits pursuant to 29 U.S.C. § 1132(a)(1)(B) and, as such, his claims pursuant to § 1132(a)(3) are precluded by longstanding ERISA precedent. In addition, Plaintiff's allegations relating to "omitted assets" and claim for a "trust fund adjustment for omitted assets" are barred because, in addition to being a claim relating to additional benefits, Plaintiff lacks standing to pursue such a claim. Accordingly, pursuant to Rule 12(b)(6), Fed. R. Civ. P., and applicable case law, the Court should dismiss Counts II and III of Plaintiff's Complaint, and the claim regarding omitted assets in Counts I, II, and III, <u>with prejudice</u>.

## II.  PLAINTIFF'S CLAIMS UNDER 29 U.S.C. § 1132(a)(3) ARE BARRED BECAUSE HIS CLAIMS ARE FOR BENEFITS UNDER 29 U.S.C. §1132(a)(1)(B).

Plaintiff's claims in Counts II and III are barred because Plaintiff has an adequate remedy under § 1132(a)(1)(B). At the outset, it is essential to note the differences between ERISA's sections 1132(a)(1)(B) and 1132(a)(3). *See* 29 U.S.C. § 1132(a)(1)(B), (a)(3). Section 1132(a)(1)(B) authorizes a participant to bring a civil action "to recover benefits due to him under the terms of his plan, to enforce his rights under the terms of the plan, or to clarify his rights to future benefits under the terms of the plan." 29 U.S.C. § 1132(a)(1)(B); *see Heffner v. Blue Cross & Blue Shield of Ala.*, 443 F.3d 1330, 1338 (11th Cir. 2006); *Jones v. Am. General Life & Accident Ins. Co.*, 370 F.3d 1065, 1069 (11th Cir. 2004). Section 1132(a)(3) provides that an action may be commenced "by a participant, beneficiary, or fiduciary (A) to enjoin any act or practice which violates any provision of this title or the terms of the plan, or (B) to obtain other

appropriate equitable relief (i) to redress such violations or (ii) to enforce any provisions of this title or the terms of the plan." 29 U.S.C. § 1132(a)(3).

Importantly, the Supreme Court has made clear that § 1132(a)(3) provides a remedy through equitable relief **only if** no other adequate remedy exists under ERISA.  *See Varity Corp. v. Howe*, 516 U.S. 489, 515 (1996).  In *Variety*, the Supreme Court addressed circumstances under which an individual plan participant or beneficiary may seek relief under 29 U.S.C. § 1132(a)(3) for a fiduciary's breach of its obligations.  The Court clarified that § 1132(a)(3) acts as a safety net, offering equitable relief only for injuries caused by violations that § 1132 does not elsewhere adequately remedy.  *Varity*, 516 U.S. at 515.[3]  The Eleventh Circuit has consistently interpreted *Varity* to preclude claims for equitable relief under 29 U.S.C. § 1132(a)(3) where, as here, an adequate remedy exists under 29 U.S.C. § 1132(a)(1)(B).  *See Ogden v. Blue Bell Creameries U.S.A., Inc.*, 348 F.3d 1284, 1287-1288 (11th Cir. 2003) (holding that the district court should not have awarded § 1132(a)(3) equitable relief because § 1132(a)(1)(B) afforded the plaintiffs an adequate remedy, notwithstanding the fact that their § 1132(a)(1)(B) claim was barred by *res judicata*); *Katz v. Comprehensive Plan of Group Ins.*, 197 F.3d 1084, 1088-1089 (11th Cir. 1999), *rehearing and suggestion for rehearing en banc denied*, 209 F.3d 726 (11th Cir. 2000) (affirming district court's dismissal of (a)(3) claim, and confirming that inability to succeed on merits of (a)(1)(B) claim does not equate to lack of an available remedy under the *Varity* framework); *Helms v. Gen. Dynamics Corp.*, 222 Fed. Appx. 821, 834 (11th Cir. 2007).  The District Courts within the Eleventh Circuit routinely follow this established precedent.

Count II of Plaintiff's Complaint alleges a variety of purported "breaches of fiduciary duty" against the Trustees and claims these alleged breaches caused Gissen's distribution to be undervalued.  *See* Compl. ¶¶ 152-155.  Count III alleges that the Village, as Plan Administrator,

---

[3]

improperly relied upon advice of the Trustees rather than the Plan documents in allowing his distribution to be undervalued. *See* Compl. ¶¶ 162-164. Notwithstanding the lengthy chronology provided in Plaintiff's Complaint, the sum and substance of his claims in Counts II and III are the same as the remainder of his Complaint, that the Trustees and/or the Plan Administrator failed to follow the applicable Plan terms and, as a result, valued his distribution incorrectly. Such a claim falls squarely within 29 U.S.C. § 1132(a)(1)(B) and Plaintiff's remedy, if any, is controlled by the extensive law developed to apply § 1132(a)(1)(B) to such benefit claims.[4] Indeed the remedy Plaintiff seeks in both Counts II and III, is a "corrective distribution" of benefits, again confirming these claims fall within the purview of §1132(a)(1)(B). Compl. ¶¶ 155, 164.[5]

In an effort to avoid dismissal, Plaintiff rotely alleges in Counts II and III that he "has no other adequate remedy at law to address the injuries he has suffered and will continue to suffer as a result of . . . [the] continued undervaluation of benefits." Compl. ¶¶ 156, 165. However, the allegation itself concedes that his injury is directly tied to his benefits and the purported under-valuation of those benefits. But it is not only the words used in Counts II and III, but the entire Complaint, that show and confirm that Plaintiff's entire action is one describing ways in which he believes the Plan Administrator and/or Trustees incorrectly interpreted or applied the Plan documents and thereby undervalued his distribution. Mr. Gissen cannot turn these claims into (a)(3) claims simply by alleging he has no adequate remedy at law. Furthermore, the remedy Plaintiff seeks in Counts II and III <u>is</u> a remedy at law, an increase in the dollar value of his retirement benefits. *See, e.g., Mertens v. Hewitt Assocs.,* 508 U.S. 248, 255, 256-258 & n.8

---

[4] Because Plaintiff has an adequate remedy under § 1132(a)(1)(B), the Supreme Court's recent analysis in *CIGNA Corp. v. Amara*, ___ U.S. ___, 131 S.Ct. 1866 (2011) does not apply. *See, e.g., Genosky v. Metro. Life Ins. Co.*, No. 11-CV-2230 (MJD/LIB), 2012 WL 3029648, *7 & n.3 (D. Minn. April 27, 2012) (distinguishing *Amara* because Genosky had a claim for pension benefits under (a)(1)(B)).

[5] Plaintiff also seeks a "trust fund adjustment or Omitted Assets," which Defendants will address separately in Section III below. *See* Compl. ¶¶ 146, 155, 164.

(1993) (monetary damages are not "equitable relief" within the meaning of 29 U.S.C. § 1132(a)(3)); *Flint v. ABB, Inc.*, 337 F.3d 1326, 1330 (11th Cir. 2003)(citing *Great-West Life & Annuity Ins. Co. v. Knudson*, 534 U.S. 204, 210 (2002) in explaining that money damages are not appropriate for an (a)(3) claim); *Broaddus v. Fla. Power Corp.*, 145 F.3d 1283, 1287 n.2 (11th Cir. 1988); *Waldrop v. Southern Co. Servs.*, 24 F.3d 152, 156 (11th Cir. 1994) (citing *Mertens*, 508 U.S. at 255); *Dunn v. Harris Corp.,* 560 F. Supp. 2d 1260, 1265-1266 (M.D. Fla. 2008) (rejecting claim under § 1132(a)(3) and noting that relief sought was monetary and not equitable in nature).

Because Plaintiff has a claim under § 1132(a)(1)(B), his claims under § 1132(a)(3) are duplicative and therefore impermissible.  The District Courts within Florida routinely follow the *Varity* and *Ogden* precedent and dismiss such duplicative claims.  *See, e.g., Sanctuary Surgical Centre, Inc. v. Unitedhealth Group, Inc.,* No. 10–81589–CIV, 2013 WL 149356,  at *10 (S.D. Fla. Jan. 14, 2103) (finding plaintiffs failed to state derivative breach of fiduciary duty claims to the extent claims were premised on an alleged improper, arbitrary or capricious denial of benefits); *Rodriguez v. Aetna Life Ins. Co.,* 859 F. Supp. 2d 1332, 1333-1334 (S.D. Fla. 2012) (dismissing the plaintiff's request for injunctive relief in action challenging denial of her LTD claim, where the plaintiff sought recovery of benefits under 29 U.S.C. § 1132(a)(1)(B)); *Castro v. Hartford Life & Acc. Ins. Co.,* No. 5:11–cv–446–Oc–34TBS, 2011 WL 4889174, at *9 (M.D. Fla. Oct. 14, 2011) (rejecting assertion that the plaintiff's claim for benefits under Section 1132(a)(1)(B) was not a bar to benefits under her 1132(a)(3) claim); *Lieberman v. United Healthcare Ins. Co.,* No. 09-81050-CIV, 2010 WL 903260, at *4 (S.D. Fla. Mar. 10, 2010) (granting a motion to dismiss plaintiff's (a)(3) claim based upon a finding that plaintiff "has alleged an injury related to a denial of benefits . . . . and the declaratory relief she seeks in count three is best addressed by a section 502(a)(1)(B) claim for recovery of benefits"); *Kennedy v. Metro. Life Ins. Co.,* 357 F. Supp. 2d 1346, 1349 (M.D. Fla. 2005) ("In determining whether

Plaintiff can state a claim under § 1132(a)(3), the relevant inquiry is whether Plaintiff 'also has a cause of action, based on the same allegations, under Section [1132(a)(1)(B)] or ERISA's other more specific remedial provisions.'"); *Chiroff v. Life Ins. Co. of Am.*, 142 F. Supp. 2d 1360, 1365 (S.D. Fla. 2000).

Accordingly, this Court should dismiss Counts II and III of Plaintiff's Complaint <u>with prejudice</u>.

## II. PLAINTIFF'S CLAIM FOR "A TRUST FUND ADJUSTMENT FOR OMITTED ASSETS" MUST BE DISMISSED BECAUSE GISSEN LACKS STANDING RELATED THERETO AND BECAUSE THE CLAIM IS DEFEATED BY THE ATTACHMENTS INCORPORATED INTO THE COMPLAINT.

In Counts I, II and III, Plaintiff seeks as part of the requested relief "a trust fund adjustment for omitted assets." *See* Compl. ¶¶ 146, 155, 164. Plaintiff describes this "omitted assets" issue at paragraphs 134-137 of the Complaint and references Exhibits XX-ZZ to the Complaint. While it appears that some aspect of these specific allegations may reach beyond a simple request for increased benefit payments to Gissen,[6] this claim is due to be dismissed because Plaintiff lacks standing to pursue it.

ERISA is a complicated and reticulated statute which has very particular standing requirements. *See, e.g.*, *Gilbert v. Alta Health & Life Ins. Co.*, 276 F.3d 1292, 1295 (11th Cir. 2001); *Gulf Life Ins. Co. v. Arnold*, 809 F.2d 1520, 1524 (11th Cir. 1987). "Section 1132 is essentially a standing provision [that] sets forth those parties who may bring civil actions under ERISA and specifies the types of actions each of those parties may pursue." *Arnold*, 809 F.2d at 1524. The only parties authorized to bring a lawsuit under the various subsections of § 1132 are: participants, beneficiaries, fiduciaries, or the Secretary of Labor. *See* 29 U.S.C. § 1132(a); *McKinnon v. Blue Cross & Blue Shield of Ala.*, 935 F.2d 1187, 1193 (11th Cir. 1991); *Arnold*,

---

[6] However, that portion of Mr. Gissen's assertion that these potential additional trust assets would increase his distribution, again falls under § 1132(a)(1)(B) and must be pursued under Count I just as the other (a)(3) allegations.

{26556336;1}                                                8

809 F.2d at 1524; *see also Physician's Multispecialty Group v. Heath Care Plan of Horton Homes, Inc.*, 371 F.3d 1291, 1293 (11th Cir. 2004); *Wolf v. Coca-Cola Co.*, 200 F.3d 1337, 1340 (11th Cir. 2000); *Gilbert*, 276 F.3d at 1295.  "These standing provisions must be construed narrowly; civil actions under ERISA are limited only to those parties and actions Congress specifically enumerated in section 1132."[7]  *Arnold*, 809 F.2d at 1524; *see also McKinnon*, 935 F.2d at 1193.

Mr. Gissen alleges he made a request for complete distribution of his Plan benefits in December 2008, and the parties agree that the Plan issued the full rollover payment of those benefits on June 5, 2009.  *See* Compl. ¶¶ 34, 123; Ans. ¶¶ 34, 123.[8]  Accordingly, Mr. Gissen ceased being a participant of the Plan upon his request for a complete distribution, or, at the very latest, upon the Plan's payment of that distribution.  It was not until after he ceased being a participant that Mr. Gissen submitted letters to the Plan regarding these purported Plan assets available for recovery that he describes in paragraphs 134-137 with references to Exhibits XX-ZZ of the Complaint.  As Mr. Gissen was no longer a Plan participant, he is not a party empowered to bring a suit concerning these potential assets.  *See McKinnon*, 935 F.2d at 1193; *see also Arnold*, 809 F.2d at 1524.

Even looking past the lack of standing to the merit of the allegations, the documents attached to the Complaint and therefore incorporated into the allegations of the Complaint, show that the Plan responded to Mr. Gissen's contentions and advised that the Plan had no record of any ownership of a security identified as "Atlantic Realty Trust" and that the Plan's financial

---

[7] Defendants note that statutory standing is separate and independent from Article III standing. *See, e.g., Physician's Multispecialty Group*, 371 F.3d at 1293-94; *Connecticut v. Health Net, Inc.*, 383 F.3d 1258, 1262 (11th Cir. 2004).  Because Gissen lacks statutory standing, it is not necessary to reach the question of Article III standing.  *See Health Net*, 383 F.3d at 1262 ("we decline to address the issue of Article III . . . standing, because we hold that Connecticut lacks statutory standing to . . . enforce the alleged ERISA violations in this case").

[8] For this analysis it does not matter that Plaintiff claims his request for complete distribution came in December while the Plan asserts the formal request did not come until January 2009.

records showed that the "Ramco-"Gershenson Properties" asset had been sold by the Plan many years prior to Mr. Gissen's inquiry.[9]  Compl. Ex. RR (decision letter).  The Plan reiterated in the appeal decision letter that it had investigated and confirmed there were no assets belonging to the Plan behind held by California or Florida as Mr. Gissen alleged.  Compl. Ex. WW (appeal decision letter).

IV.     **CONCLUSION**

Defendants respectfully request that the Court enter an Order dismissing with prejudice (i) Count II of the Complaint; (ii) Count III of the Complaint; and (iii) the claim for "a trust fund adjustment for omitted assets" from Counts I, II and III of the Complaint.

Dated: June 14, 2013

Respectfully submitted,

/s/ Stephanie A. Segalini
Irene A. Bassel Frick
Florida Bar No.:  0158739
Email: irene.bassel@akerman.com
Akerman Senterfitt
SunTrust Financial Centre, Suite 1700
401 E. Jackson Street
Tampa, Florida  33602
Telephone: (813) 223-7333
Facsimile: (813) 223-2837

and

Stephanie A. Segalini, Esq.
Florida Bar No.: 92630
Email: stephanie.segalini@akerman.com
Akerman Senterfitt
420 S Orange Avenue, Suite 1200
Orlando, Florida 32801-4904
Telephone:  407.423.4000
Facsimile:  407.843.6610

Counsel for Defendants

---

[9] Notably, the so-called notices regarding any assets in California were being sent by an asset recovery company, which was essentially phishing for a signature and other information from Mr. Gissen that might allow that company access to such assets, which the letters show were apparently in Mr. Gissen's name personally, not the Plan's.  See Compl. Exs. XX, ZZ.

## CERTIFICATE OF SERVICE

I HEREBY CERTIFY that on June 14, 2013, I electronically filed the foregoing with the Clerk of the Court by using the CM/ECF system which will transmit notice via email to all counsel or parties of record on the Service List below.

/s/ Stephanie A. Segalini
Stephanie A. Segalini, Esq.
Florida Bar Number: 092630

## SERVICE LIST
Case No. 13-21565-CV-UNGARO

Eileen L. Parsons, Esquire
Mallory L. Gold, Esquire
Ver Ploeg & Lumpkin, P.A.
100 S.E. Second Street, 30th Floor
Miami, FL 33131
Tel:  (305) 577-3996
Fax:  (305) 577-3558
email:  eparsons@vpl-law.com
email:  mgold@vpl-law.com
*Counsel for Plaintiff*